UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

TROY BOILER WORKS, INC.,              :
                                      :
        Plaintiff,                    :
                                      :
        v.                            :   Case No. 2:21-cv-30
                                      :
LONG FALLS PAPERBOARD, LLC,           :
AIRCLEAN TECHNOLOGIES, INC.,          :
and BRATTLEBORO DEVELOPMENT           :
CREDIT CORPORATION,                   :
                                      :
        Defendants.                   :

<u>**OPINION AND ORDER**</u>

Plaintiff Troy Boiler Works, Inc. ("Troy Boiler") brings this action against Long Falls Paperboard, LLC ("Long Falls"), AirClean Technologies, Inc. ("AirClean") and Brattleboro Development Credit Corporation ("BDCC"), alleging defendants failed to pay for work performed between December 2019 and January 2020 as part of the "Long Falls Paperboard Steam Efficiency Project" (the "Project").  AirClean has filed cross-claims against its co-defendants, including Long Falls.  Now before the Court is Long Falls' motion for partial summary judgment on the claims asserted by Troy Boiler and AirClean. The motion does not address Troy Boiler's claims against Long Falls for work performed prior to the Project.  For the reasons set forth below, the motion is granted in part and denied in part.

**Factual Background**

The disputes in this case arise out of work performed at the Long Falls paper mill plant in Brattleboro, Vermont.  On July 29, 2019, Long Falls and Green Mountain Power ("GMP") entered into a contract to upgrade burners, improve efficiency, and reduce energy costs at the plant (the "Rebate Contract" or "Contract").  As part of the Contract, GMP agreed to provide Economic Development Incentive Pricing to reduce the cost of electricity at the plant, as well as funding to partially subsidize the replacement and upgrading of burners, controls, and pipe insulation.

The Rebate Contract specified AirClean as the vendor of equipment and services, and AirClean retained Troy Boiler as a subcontractor.  The Contract also attached and incorporated AirClean's April 2019 proposal to Long Falls (the "Proposal"). The Proposal stated that AirClean was a "vertically integrated company, having design, manufacturing and service/support all in one company" with projects "managed by engineers" and "professional support" for "all project needs."

AirClean's Proposal offered to replace existing Peabody/Coen natural gas burners with Webster burners, which were to be integrated with a programmable controller (an Allen Bradley PLC) for burner management and combustion controls. AirClean's Proposal also stated that "[t]he combustion controls

2

and boiler management system will be integrated into the plant [distributed control system]" and that Long Falls would be responsible for "Delta V Programming."  AirClean described its proposal as "a turn-key project" that included "the startup and commissioning of the new burners also."

These plant upgrades were intended to achieve offsets for fuel consumption and reduce energy costs as required for the receipt of the grant funding being provided by GMP.  Under the Rebate Contract, GMP was to issue an installment of $100,000 directly to AirClean (and a second contractor) upon the completion and verification of the initial project work.  A second installment of $200,000 was to be paid to Long Falls upon satisfactory completion of the project work, with verification by December 31, 2019.

On July 29, 2019, Long Falls issued Purchase Order No. 60555 to AirClean for equipment and services described in AirClean's Proposal.  The Purchase Order included Long Falls' General Terms and Conditions, which stated that "[a]ny addition or modification" was "hereby objected to and rejected, notwithstanding [Long Falls'] acceptance of delivery or payment for goods and services."  The General Terms and Conditions also required a written change notice for any changes to the contract.  On December 5, 2019, Long Falls issued a second Purchase Order, Number 61265, for boiler work and wall repair.

3

The terms and conditions of that Order were the same as those in the prior Order.

Those terms and conditions were not consistent with AirClean's Proposal, which stated that "[a]ll claims for corrections or deductions must be made in writing within ten (10) days after delivery of goods.  If no claim is made, Buyer will be deemed to have accepted all goods."  The Proposal also provided that by placing an order, the buyer was assenting to the Proposal's terms and "[n]o modification, addition to, or waiver of any of the terms and conditions stated herein shall be binding upon [AirClean] except by written consent of an authorized officer of [AirClean]."  The Proposal did not require AirClean to submit a written change order for changes or substitutions.

The Proposal also included payment milestones.  Those milestones required payments as follows: 10% upon purchase order; 20% upon submittal of drawings for approval; 40% upon complete delivery to the project site; and 30% final payment after installation/startup.  Michael Cammenga, a Long Falls principal, has testified that Long Falls agreed to those payment milestones.  AirClean accepted three milestone payments from GMP totaling $108,631.50 between August and December 2019.

On August 16, 2019, AirClean notified Long Falls that "Webster engineering increased their price by $50,000" for the

burners identified in the Proposal, and that AirClean was
"scrambling."  AirClean further reported that it had "a new
proposal from PowerFlame," and that it was "investigating the
interface of the [PowerFlame] burner and its communications."
AirClean stated that it would have "the burners on order next
week, and schedule looks OK."

There is a dispute about whether Long Falls approved the
substitution of the Webster burners.  It is undisputed that
AirClean never submitted a written change order for the
equipment substitution as required by the terms and conditions
of Long Falls' Purchase Order.  AirClean responds that Long
Falls agreed to the substitution through its conduct over
several months.  First, AirClean argues that Long Falls
acquiesced to the change by remaining silent when AirClean
reported in August 2019 that it would have the PowerFlame
burners on order the following week.  AirClean further claims
that, in October 2019, Long Falls viewed "general arrangement
drawings" depicting the PowerFlame burners and told AirClean to
proceed.  Long Falls concedes that the drawings showed the
placement of equipment, but contends that acceptance of the
drawings did not constitute acceptance of the PowerFlame burners
specifically.  Finally, AirClean delivered the PowerFlame
burners in December 2019, and Long Falls did not reject them as
non-conforming.

AirClean delivered Variable Frequency Drives ("VFDs") on December 28, 2019. VFDs regulate the speed of the blower fans, which provide air to the boilers and promote electrical energy efficiency by not requiring the boiler to run at full throttle all the time. One of the VFDs arrived damaged and had to be returned for replacement. AirClean submits that it supplied the replacement at no cost to Long Falls. It is undisputed that AirClean did not provide Long Falls with the correct schematics for wiring the VFD until January 13, 2020.

On February 22, 2020, Long Falls engineer John Brooke confirmed that all parts for the VFDs had been delivered by AirClean. AirClean notes that the missing parts prior to that date consisted of one control relay and one mounting block. AirClean contends that those parts were shipped initially with the VFDs and burners, and that a replacement set was sent when Long Falls could not find them. AirClean argues that, in any event, the two allegedly-missing components should not have impaired installation, as they were available locally for approximately $10.

AirClean demobilized from the project without programming the VFDs. AirClean alleges that it was unable to program the VFDs and tune and commission the boilers until Long Falls first installed the VFDs and the power and control wiring with

conduit.  It is undisputed that AirClean has not performed "commissioning" of the new burners.

With respect to Troy Boiler's claims for non-payment, Long Falls contends that Troy Boiler used reciprocating saws to cut essential conduit and wiring connecting instrumentation to the burners, resulting in damage and the need to replace the conduit and wiring.  Adam LaPoint finished the conduit work on or about December 23, 2019.  Troy Boiler disputes Long Falls' factual claims.

Troy Boiler filed suit in this case on February 12, 2021, alleging failure to pay for work performed between December 2019 and January 2020.  The complaint included causes of action for violation of Vermont's Prompt Payer Act, breach of contract, unjust enrichment, and quantum meruit.  AirClean's answer to the complaint includes cross-claims against BDCC and Long Falls. The cross-claim against Long Falls, brought pursuant to 9 V.S.A. § 4001 *et seq.*, alleges that by January 31, 2020 Long Falls had not completed all of the work set forth in the parties' Scope Matrix.  Specifically, AirClean alleges that Long Falls failed to wire the new boiler controls and new VFDs.  As a result, AirClean was unable to complete the programming for the VFD operation.

AirClean asserts that because of Long Falls' failure to complete its scope of work, the repaired boilers and replacement

7

burners do not operate at 100% efficiency.  AirClean further
alleges that Long Falls operates the boilers and replacement
burners at 100% capacity approximately 98% of the time, and that
the un-programmed VFDs are not designed to operate, and do not
impact efficiency, when the boilers run at 100% capacity.

GMP allegedly paid AirClean $108,632 of the $362,105 due
under Purchase Order 60555.  AirClean billed Long Falls for the
remaining balance.  AirClean also billed Long Falls $152,574.94
for work performed under Purchase Order 61255.  AirClean has
since filed contractor's liens for both balances.  AirClean
previously moved this Court for a writ of attachment with
respect to the amounts allegedly due from Long Falls and BDCC.
After full briefing and a testimonial hearing, the Court denied
the motion.

Long Falls now moves for summary judgment on the claims
brought by Troy Boiler and AirClean for non-payment on Project
work.  Long Falls first argues that AirClean is contractually
prohibited from maintaining its cross-claim because AirClean's
Proposal expressly established "exclusive jurisdiction and venue
of the federal and state courts located at Kings County,
Washington with respect to any claims, suits or proceedings
arising out of or in connection with this Agreement."  Long
Falls next argues that AirClean is barred from bringing
equitable claims given the existence of written contracts

8

between the parties.  With respect to Troy Boiler, Long Falls
argues that it never had a contract with Troy Boiler, and that
any breach of contract claim is therefore barred.  Troy Boiler
has since withdrawn its contract claim with respect to work it
performed on the Project, but maintains its quasi-contract and
unjust enrichment claims against Long Falls for Project work.
Finally, Long Falls contends that the claims against it require
expert witnesses, and that no such witnesses have been
disclosed.

## **Discussion**

### I.   **Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil
Procedure, summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  The moving party bears the initial burden of
pointing to evidence in the record, "including depositions,
documents ... [and] affidavits or declarations," Fed. R. Civ. P.
56(c)(1)(A), "which it believes demonstrate[s] the absence of a
genuine issue of material fact," *Celotex Corp. v. Catrett*, 477
U.S. 317, 323 (1986).  If the moving party fulfills its burden,
the nonmoving party must demonstrate a genuine issue of material
fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Courts must "draw all rational inferences in the non-movant's favor." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248).  At the summary judgment stage "the judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.

## II.  Jurisdiction and Venue Provision

AirClean's Proposal states explicitly that "any claims" must be brought in the State of Washington.  The Proposal further states that this Jurisdiction and Venue provision is "irrevocable."  Nonetheless, AirClean has asserted its cross-claims in this Court, and not in a separate action in Washington state.  Long Falls argues that the cross-claims are barred by AirClean's own contract language, and moves for summary judgment on that basis.[1]

---

[1] AirClean contends that the Court previously denied its motion for writ of attachment on the basis of the forum selection clause.  ECF No. 98 at 1.  The Court's prior ruling found: (1) that the Long Falls purchase orders contained their own terms and conditions; (2) that AirClean did not discuss the question of Washington law in its briefing; and (3) that given the evidence, AirClean had not shown a reasonable likelihood of

"Questions relating to the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, thus, federal law governs." *Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).  In order to determine whether to dismiss a complaint based on a forum selection clause, the court conducts a four step analysis: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; (3) whether the claims and parties involved in the suit are subject to the forum selection clause; and (4) whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007).

Here, there is no question of reasonable communication, as AirClean is seeking to avoid its own forum selection provision. The provision states that forum selection is irrevocable, thus rendering it mandatory.  As set forth by the Second Circuit in

proving that its own Proposal governed the parties' dealings. ECF No. 61 at 23.

*Phillips*, the third consideration is whether the parties are, in fact, subject to the terms of the forum selection clause. AirClean argues that it is not bound by its contract because Long Falls waived the right to object to venue by (1) failing to assert improper venue as an affirmative defense, and (2) litigating in this Court on the merits.  AirClean also contends that it could not have litigated in Washington state because Washington has no *in rem* jurisdiction over its co-defendants.

The *in rem* issue assumes that AirClean could not have proceeded in Washington state and then domesticated any eventual judgment in Vermont.  Nothing before the Court suggests that AirClean was unable to pursue that course.  The Court therefore turns to AirClean's contention that it is no longer bound because Long Falls has waived its venue objection.

"The inquiry courts use to determine whether a party has waived his right to challenge venue is fact specific." *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 86 (S.D.N.Y. 1999); *see also Sherman v. Moore*, 86 F.R.D. 471, 473 (S.D.N.Y. 1980) ("It is clear that a party may waive its objection to venue by its pre-trial conduct").  When considering whether a party has waived enforcement of a forum selection clause, "[c]ourts have found implied waiver of venue where a party has repeatedly represented that venue is appropriate . . . or actively pursued substantive motions." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,

No. 07 Civ. 9580(HB), 2008 WL 4833001, at 15 (S.D.N.Y. Nov. 5, 2008).  "[N]o waiver has been found where parties merely participated in pretrial motions, moved to dismiss after discovery has been completed, or where the opposing party was not prejudiced by the dismissal."  *Ferraro Foods Inc. v. M/V Izzet Incekara*, No. 01 Civ. 2682(RWS), 2001 WL 940562, at *4 (S.D.N.Y. Aug. 20, 2001) (citing *Sherman*, 86 F.R.D. at 473-74 (collecting cases)).

AirClean argues that Long Falls waived its objection by failing to assert improper venue as an affirmative defense. However, at least one court in this Circuit has found that a defendant does not waive enforcement of a forum selection clause by failing to assert improper forum as an affirmative defense and instead seeking enforcement "in [its] first motion to the Court."  *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 567-68 (S.D.N.Y. 2013).  Other courts have found that significant delay, or participation in other aspects of the case, constitute waiver.  *See, e.g., Sharpe v. Jefferson Distributing Co.*, 148 F.3d 676, 679 (7th Cir. 1998) (holding that a seven-month delay in asserting the forum selection clause was too long); *Mateco, Inc. v. M/V Elli*, 103 F. Supp. 2d 70, 72-73 (D.P.R. 2000) (finding waiver when the defendant did not raise the forum-selection clause as an affirmative defense, participated in

discovery for over a year, filed a counterclaim, and requested that the plaintiffs provide counter security).

Here, Long Falls did not raise the forum defense in its initial pleadings.  Nor did it argue improper forum when it first opposed AirClean's motion for writ of attachment.  Only after the attachment hearing, and after AirClean's Chief Executive Officer admitted that AirClean was not adhering to its own forum selection clause, did Long Falls note the clause in a post-hearing memorandum.  Even in that memorandum, however, Long Falls did not assert that venue was improper.  Long Falls instead argued that by failing to comply with the terms of its own Proposal, AirClean should be precluded from enforcing any part of that Proposal.  ECF No. 59 at 5.

Accordingly, it is Long Falls' motion for partial summary judgment that, for the first time, seeks to enforce the forum selection clause in AirClean's proposal.  That motion was filed over one year after Troy Boiler initiated this case.  Given Long Falls' delay, the Court finds that its right to claim improper forum is likely waived.  *See, e.g., American Int'l Group Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369 (S.D.N.Y. 2010) (finding that defendant waived its venue objection when it failed to assert the forum-selection clause in its answer, "attempt[ed] to implead third-party defendants[,] and file[d] several affidavits, affirmations, and memoranda of

law ... all before [ ] assert[ing] the forum[-]selection clause
in its brief in opposition to [the plaintiff's] motion for
summary judgment.").

The Court need not resolve the question of waiver, however,
since genuine issues of material fact prevent enforcement of the
forum selection clause as part of the governing contract
document.  On the same day Long Falls filed the instant motion
for partial summary judgment, AirClean filed its own motion for
summary judgment.  In that motion, AirClean argues that its
Proposal, and all terms set forth therein, govern the parties'
transactions.  Here, however, AirClean seeks to avoid the terms
of that same Proposal.  By repudiating its own forum selection
clause, AirClean is effectively conceding that it did not agree
to that contract provision.  The concession calls into question
AirClean's entire position in its motion for summary judgment,
including the enforceability of any of the language within its
Proposal.

Moreover, as set forth in the Court's Opinion and Order on
AirClean's motion, there are genuine issues of material fact as
to whether the parties agreed to the terms and conditions in the
Rebate Contract, AirClean's Proposal, Long Falls' Purchase
Orders, or to agreements established during the parties' course
of dealing.  The Court therefore finds that it cannot enforce
AirClean's forum selection provision as a matter of law.

## II.  AirClean's Equitable Claims

Long Falls next contends that AirClean cannot pursue an equitable claim, such as quasi-contract, because the parties had an actual contract.  On this discrete point AirClean agrees, although it disagrees about the effective, underlying contract. ECF No. 98 at 13 (AirClean's memorandum stating that "AirClean concedes it has no claim to equitable relief.  However, the contract that denies AirClean equitable relief is the Rebate Contract that incorporated AirClean's Terms and Conditions, not Long Falls' Purchase Order.").  Because the effective contract, if any, has not yet been determined, the Court cannot dismiss AirClean's equitable claims at this time.  The motion for summary judgment on those claims is denied.

## III. Troy Boiler's Contract Claim

Long Falls next moves for summary judgment against Troy Boiler, arguing that Troy Boiler has no valid breach of contract claim.  Long Falls has made clear that its summary judgment motion does not encompass any claims Troy Boiler may have for pre-Project work.  In response to the motion, Troy Boiler concedes that it does not have a contract with Long Falls with respect to the Project (as it was a subcontractor hired by AirClean), and that it is withdrawing "its claims of breach of contract and under the Vermont Prompt Payer Act only as to Long Falls Paperboard and only as to the 'Project.'"  ECF No. 99 at

16

1.  Troy Boiler makes clear, however, that it is pursuing equitable claims against Long Falls for work performed on the Project.  Specifically, Troy Boiler states that it "intends to proceed against Defendant Long Falls Paperboard pursuant to the Project under its Count III Unjust Enrichment and Count IV Quantum Meruit, and against Long Falls Paperboard for Count I violation of the Prompt Payer Act and Count II Breach of Contract as to the 'non Project' component of its claims."  *Id.* at 2.  Accordingly, with respect to Troy Boiler's breach of contract and Vermont Prompt Payer Act claims related to the Project, Long Falls' motion for summary judgment is granted.

## IV.  Expert Testimony

Long Falls' final argument is that the claims brought by Troy Boiler and AirClean are complex, and require expert testimony for support.  Troy Boiler and AirClean have not served any expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A).  As the deadlines for such disclosures have passed, Long Falls contends that all claims brought by Troy Boiler and AirClean must be dismissed.

Both Troy Boiler and AirClean have identified witnesses to testify about the contractual and the technical aspects of this case.  AirClean's Chief Executive Officer, Patrick Paul, has submitted detailed affidavits and testified before the Court in the context of AirClean's motion for a writ of attachment.

17

AirClean contends that Mr. Paul's affidavits and testimony satisfy the requirements of Rule 26(a)(2).  Troy Boiler President Lou Okonski has also provided an affidavit and testimony.

AirClean further argues that its *prima facie* case is a claim for breach of contract, and that no expert technical testimony is needed to assist the fact finder with respect to either the essential terms of that contract, or the parties' conduct in performing the contract.  While Long Falls contends that AirClean must show that its deliveries resulted in a "turn key" installation that provided energy savings, AirClean counters that it never offered a warranty for the purpose of upgrading the plant's energy efficiency.

There is no dispute that the deadline for expert disclosures has passed.  The question before the Court is whether the passing of that deadline without such disclosures warrants the dismissal of claims.  Under the Federal Rules of Civil Procedure, when a party fails to identify a witness under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This is a discretionary remedy.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (holding that preclusion is discretionary even if

"the trial court finds that there is no substantial justification and the failure to disclose is not harmless").  A cause of action may also be dismissed if expert testimony is necessary and no such expert has been retained.  *See, e.g., Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (affirming dismissal of a claim where "the causal link between exposure to toxins and other behavior and squamous cell carcinoma is sufficiently beyond the knowledge of the lay juror that expert testimony is required to establish causation").

It is well established that expert testimony is unnecessary in cases where jurors "are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training."  *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962) (internal quotation marks omitted).  In this case, the claims at issue center on the installation of certain equipment and whether such installation satisfied the parties' agreements.  The jury may also be required to assess damages, although those damages will be dictated in large part by the contract terms and the work performed.  AirClean and Troy Boiler contend that special expert testimony is not required, as any technical information will be supplied by their officers and/or tradesmen.  Those witnesses have presumably been available for deposition, and Troy Boiler

has informed the Court that it has no objection to an extension of time if Long Falls seeks to conduct additional depositions.

Long Falls has not offered any precedential support for its contention that a case such as this requires expert testimony. Although Long Falls contends that expertise is required to determine whether certain work met industry standards, this case is primarily about performance under the terms of a contract and whether certain contractual provisions were satisfied.  Delivery and payment terms, rather than work quality, will be the primary issues.  As necessary, fact witnesses may explain the workings of the Long Falls plant and the various equipment involved in the parties' contracts.  Nothing in the materials filed in this Court to date suggest that jurors will be unable to understand those fundamental facts without assistance from additional experts.  The motion for summary judgment on the basis of inadequate expert disclosures is therefore denied.

## Conclusion

For the reasons set forth above, Long Falls' motion for partial summary judgment (ECF No. 89) is granted in part and denied in part.

DATED at Burlington, in the District of Vermont, this 16th day of June, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge