UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
TROY BOILER WORKS, INC.,          :
                                  :
        Plaintiff,                :
                                  :
        v.                        :    Case No. 2:21-cv-30
                                  :
LONG FALLS PAPERBOARD, LLC,       :
AIRCLEAN TECHNOLOGIES, INC.,      :
and BRATTLEBORO DEVELOPMENT       :
CREDIT CORPORATION,               :
                                  :
        Defendants.               :
```

### OPINION AND ORDER

Plaintiff Troy Boiler Works, Inc. ("Troy Boiler") brings this action against Long Falls Paperboard, LLC ("Long Falls"), AirClean Technologies, Inc. ("AirClean") and Brattleboro Development Credit Corporation ("BDCC"), alleging defendants failed to pay for work performed between December 2019 and January 2020 as part of the Long Falls Paperboard Steam Efficiency Project (the "Project"). AirClean has filed cross-claims against its co-defendants. Now before the Court is AirClean's motion for summary judgment on its cross-claims against Long Falls. For the reasons set forth below, the motion is denied.

### Factual Background

On July 29, 2019, Long Falls entered into a contract ("Rebate Contract" or "Contract") with Green Mountain Power

("GMP") to upgrade burners and improve efficiency at the Long Falls paper mill plant in Brattleboro, Vermont.  As part of the Rebate Contract, GMP agreed to provide Economic Development Incentive Pricing to subsidize the replacement and upgrading of burners.  The Contract identified AirClean as the vendor, and provided that upon receipt of an itemized invoice GMP would make payment to AirClean in an amount not to exceed $100,000.  The Contract also stated that GMP would pay up to $200,000 directly to Long Falls upon completion of the project.

AirClean's proposal ("Proposal") was attached to the Rebate Contract.  The Proposal stated that AirClean would replace existing natural gas burners with new, Webster Model HDR(X)-RF burners to be integrated with a modern, programmable Allen Bradley controller.  Long Falls would be responsible for programming the plant control system, known as "Delta V."  A subsequent "Scope Matrix" indicated that Long Falls was also responsible for installing and wiring the variable frequency drives ("VFDs"), which control a fan burner's speed.  AirClean was responsible for programming and tuning the VFDs.

Upon entering into the Rebate Contract, Long Falls issued Purchase Order No. 60555 to AirClean for equipment and services described in AirClean's Proposal.  The Purchase Order included Long Falls' General Terms and Conditions, which stated that "[a]ny addition or modification" was "hereby objected to and

2

rejected, notwithstanding [Long Falls'] acceptance of delivery or payment for goods and services."  The General Terms and Conditions also required a written notice for any changes to the contract.

On December 5, 2019, Long Falls issued a second Purchase Order, Number 61265, for $124,677 worth of boiler work and wall repair.  The Purchase Order issued after AirClean informed Long Falls that boilers 1 and 2 had deteriorated and needed to be repaired in order for AirClean to safely complete the burner upgrades.  Both parties agree that this Purchase Order constituted a change order to the original project scope.

The terms and conditions of the second Purchase Order were the same as those in the prior Order.  Both Purchase Orders stated that acceptance of the Order was required on an attached acceptance copy, which needed to be signed and returned "immediately," but that acceptance could also be manifested through "conduct by the Seller recognizing the existence of an agreement."  AirClean contends that it never sent a signed an acceptance.  Long Falls submits that AirClean manifested acceptance through subsequent conduct.

Long Falls' Purchase Order terms and conditions were not consistent with the terms of AirClean's Proposal, which stated that "[a]ll claims for corrections or deductions must be made in writing within ten (10) days after delivery of goods.  If no

claim is made, Buyer will be deemed to have accepted all goods."
The Proposal also provided that by placing an order, the buyer
was assenting to the Proposal's terms and "[n]o modification,
addition to, or waiver of any of the terms and conditions stated
herein shall be binding upon [AirClean] except by written
consent of an authorized officer of [AirClean]."  The Proposal
did not require AirClean to submit a written change order for
changes or substitutions.

The Proposal also included payment milestones.  Those
milestones called for payments as follows: 10% upon purchase
order; 20% upon submittal of drawings for approval; 40% upon
complete delivery to the project site; and 30% final payment
after installation/startup.  Michael Cammenga, a Long Falls
principal and plant manager, testified that Long Falls agreed to
those payment milestones.  *See* ECF No. 65 at 59:5-24 ("The
agreement was that there was [sic] specific milestones proposed
by AirClean in their quote.  Those are the payment milestones we
agreed to.").  Notwithstanding Mr. Cammenga's testimony, Long
Falls now disputes any such agreement on the payment terms,
citing AirClean CEO Patrick Paul's testimony that the payment
milestones had "nothing to do with our contract."  AirClean
accepted three milestone payments from GMP totaling $108,631.50
between August and December 2019.

4

Long Falls did not make the 40% milestone payment, and now argues that AirClean did not fully deliver on its Proposal.  The dispute centers on AirClean's substitution of certain items identified in the Proposal, and AirClean's departure from the job before completion.  As noted above, the Proposal called for the installation of Webster burners and an Allen Bradley control system.  On August 16 and 17, 2019, AirClean advised Mr. Cammenga that Webster had increased its price by $50,000, and that AirClean had a new proposal from PowerFlame.  AirClean further informed Mr. Cammenga that it was investigating the interface with the PowerFlame burner, and that it would have burners on order the following week.  The PowerFlame burner required a Honeywell control system.  When Mr. Cammenga received notification from AirClean of the proposed substitution, he responded that "it would be great if we were able to use the Delta V system wherever possible so that we minimize engineering and control issues later."

Long Falls submits that it never authorized the substitution of burners, and Mr. Cammenga has testified that he never would have agreed to substitute a Honeywell control system because Long Falls had no experience with such a system.  Mr. Cammenga further explained that GMP approved the Webster burners in the Rebate Contract, and that he would have expected any

material change to that contract to include a written change order request.

AirClean sent drawings to Long Falls on October 1, 2019 showing the location of various equipment, including a PowerFlame burner.  Mr. Cammenga communicated to AirClean that his team had no concerns and that AirClean should proceed.  Mr. Cammenga has testified that he did not understand the drawings to indicate a particular type of equipment, and that in his many years of experience a general arrangement drawing had never been used for specification approval.

AirClean nonetheless argues that Long Falls ultimately accepted the burner and control substitutions.  For support, AirClean cites a March 5, 2020 email from Mr. Cammenga to his team, which stated: "This is the milestone invoice for the burner projects for delivery of equipment.  We finally received all parts as noted in handwriting on the top of the invoice.  I have also attached an email from John Brooke confirming the date we actually received the past part."  The John Brooke email was dated February 22, 2020, and stated: "Parts arrived yesterday."  The final "past part[s]" reportedly consisted of a relay and relay block, which AirClean submits could have been purchased at a local retailer for approximately $10.

The invoice referenced in Mr. Cammenga's email is a December 20, 2019 invoice for $144,842.00, with a payment due

6

date of January 19, 2020.  The invoice was altered by hand,
allegedly by Long Falls, to indicate a delivery date of February
21, 2020 (the date on which the relay and relay block arrived)
and a payment due date of March 20, 2020.  AirClean submits
that, even accepting the handwritten alterations as legitimate,
those alterations acknowledge a payment due date of 30 days from
invoice, which was consistent with AirClean's Proposal.
AirClean also notes that Mr. Cammenga's emails did not object to
the substituted burner and control system.

Long Falls contends that it has not paid the invoice
because equipment and services were not delivered in accordance
with the terms of AirClean's Proposal.  Specifically, Long Falls
contends that AirClean promised, but failed to deliver, "turn-
key" delivery and "start up and commissioning" that would
trigger inspection and approval by GMP and payment of the
remaining grant funds.  Those claims appear to encompass both
the equipment substitution and AirClean's departure from the
Project prior to completion.

AirClean contends that it left the Project because Long
Falls failed to comply with its own work obligations.  Long
Falls attributes that failure to various delays beyond its
control.  On December 16, 2019, Long Falls began blower fan work
on burner number 1, but was allegedly unable to prepare removal
of the burner because Troy Boiler had cut all of the conduits

7

with reciprocating saws.  Adam LaPoint was able to complete the
conduit work on December 23, 2019.  On December 28, 2019, the
VFDs arrived but one was damaged and had to be returned.  Long
Falls alleges that AirClean did not provide Long Falls with
correct schematics for wiring the VFDs until January 13, 2020,
and that all necessary parts (the last of which were the relay
and relay block) did not arrive until late February, 2020.
Accordingly, Long Falls claims that it could not perform the
necessary wiring.  It is undisputed that on January 30, 2020,
AirClean "demobilized" without programming or tuning the VFDs.
Long Falls claims that AirClean has refused to return to the
Project to perform final programming and tuning.

    GMP allegedly paid AirClean $108,632 of the $362,105 due
under Purchase Order 60555.  AirClean billed Long Falls for the
remaining balance.  AirClean also billed Long Falls $152,574.94
for work performed on boilers 1 and 2 under Purchase Order
61255.  There have reportedly been no complaints about the
quality of work on the two boilers.  AirClean has since filed
contractor's liens for both balances.

    Troy Boiler filed this civil action on February 12, 2021
against AirClean, Long Falls, and BDCC.  On April 23, 2021,
AirClean filed a crossclaim against Long Falls under 9 V.S.A. §
4001 *et seq.*, Vermont's Prompt Payment Act.  AirClean previously
moved this Court for a writ of attachment with respect to the

amounts allegedly due from Long Falls and BDCC.  After full briefing and a testimonial hearing, the Court found that AirClean had failed to demonstrate a reasonable likelihood of success on the merits and denied the motion.  AirClean now moves for summary judgment on its claim against Long Falls.

## Discussion

### I.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents ... [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party fulfills its burden, the nonmoving party must demonstrate a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Courts must "draw all rational inferences in the non-movant's favor."

*Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248).  At the summary judgment stage "the judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson*, 477 U.S. at 252.

## II.  Prompt Payment Act Claim

"The purpose of the prompt payment act is to provide protection against nonpayment to contractors and subcontractors."  *Elec. Man, Inc. v. Charos*, 2006 VT 16, ¶ 12, 179 Vt. 351, 895 A.2d 193.  Thus, the statute obligates owners to pay contractors "in accordance with the terms of the construction contract."  9 V.S.A. § 4002(a); *see Birchwood Land Co. v. Ormond Bushey & Sons, Inc.*, 2013 VT 60, ¶ 21, 194 Vt. 478, 489-90, 82 A.3d 539, 547 (2013).  AirClean contends that certain undisputed portions of the parties' contracts, together with their course of dealing, compel payment by Long Falls.

### A.  Payment Terms

AirClean first argues that Long Falls is obligated to pay the 40% milestone payment, as Mr. Cammenga's emails allegedly indicated full performance on that milestone.  Specifically, Mr. Brooke informed Mr. Cammenga on February 22, 2020 that all parts had been received, and Mr. Cammenga confirmed as much in a March 5, 2020 email to his team.  The AirClean invoice was dated

10

December 19, 2019 with payment due within 30 days, but Long
Falls altered the effective date to February 21, 2020 after Mr.
Brooke confirmed receipt of all materials.  Long Falls also
handwrote the date of March 20, 2020, which coincides with the
30-day payment due date under the terms of AirClean's Proposal.
AirClean thus contends that Long Falls' failure to pay the
$144,842 milestone payment constitutes a material breach of
contract.

The Court first considers whether there was an agreement
with respect to the payment schedule.  AirClean set forth the
milestone schedule in its Proposal, and Mr. Cammenga testified
that Long Falls accepted AirClean's terms.  Mr. Cammenga's
subsequent emails to his co-workers confirm his acceptance.
Nonetheless, AirClean CEO Patrick Paul testified that the
payment milestones had "nothing to do with our contract," and
that payments were instead governed by the terms and conditions
requiring payment 30 days after invoice.  ECF No. 66 at 41, 66.
As indicated by the handwriting on the invoice, Long Falls
acknowledged the 30-day due date.

"An enforceable contract must demonstrate a meeting of the
minds of the parties: an offer by one of them and an acceptance
of such offer by the other."  *Starr Farm Beach Campowners Ass'n
v. Boylan*, 174 Vt. 503, 505, 811 A.2d 155, 158 (2002) (mem.).
"To constitute a meeting of the minds, the acceptance must in

11

every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed . . . ." *Sweet v. St. Pierre*, 2018 VT 122, ¶ 12, 209 Vt. 1, 201 A.3d 978 (quotation omitted).  "The existence of an agreement is ordinarily a question of fact for the trier."  *Town of Rutland v. City of Rutland*, 170 Vt. 87, 90, 743 A.2d 585, 587 (1999).

Here, there is a dispute as to whether the parties agreed on a set of terms and conditions governing their transactions. Long Falls contends that the terms and conditions of its Purchase Orders governed, yet acknowledges the milestone schedule set forth in the AirClean Proposal.  AirClean proposed the milestones, but now contends that those milestones were not a part of the contract.  Given these facts, the Court cannot determine as a matter of law that the parties had a meeting of the minds with respect to the milestone schedule.  *See id.*

Regardless of any agreement on the milestone payment schedule, the Court may still consider whether money is due for work that was invoiced.  AirClean argues that it delivered on the Purchase Orders and that payment was due within 30 days of invoice.  Long Falls contends that although certain materials were delivered, project performance was nonconforming and incomplete.  The most significant disputes pertain to the burner substitution and AirClean's departure from the job.  The Court must therefore determine whether, despite factual questions

12

about certain terms of the parties' agreement, AirClean is
entitled to payment as a matter of law.

   **B.   Equipment Substitutions**

   According to AirClean, the parties' course of dealing over
several months shows that Long Falls accepted the substitution
of the PowerFlame burners.  "It is well established that parties
can modify contractual agreements with one another through the
course of performance or dealings." *Estate of Kuhling by
Kuhling v. Glaze*, 2018 VT 75, ¶ 38, 208 Vt. 273, 290, 196 A.3d
1125, 1136 (2018) (citing *Powers v. Rutland R. R.*, 88 Vt. 376,
394-95, 92 A. 463, 470 (1914) ("The law of modified or
substituted contracts is well settled.  The parties to a written
contract not under seal, at any time before a breach of it, by a
new contract not in writing, may waive, dissolve or annul the
former agreement, or in any manner add to, subtract from, or
vary or qualify its terms, and thus make a new contract. . . .
It is not necessary that there be an express agreement of
modification or substitution; a new agreement may be implied
from the conduct of the parties.")).

   AirClean's course of dealing argument hinges primarily on
two events: the notice of possible substitution in August 2019,
and the approval of arrangement drawings in October 2019.  When
AirClean informed Mr. Cammenga in August 2019 that it was
exploring a substitution and that orders would be placed in the

near future, Long Falls did not state any objection at that time.  Instead, Mr. Cammenga communicated to AirClean that "it would be great if we were able to use the Delta V system whenever possible so that we can minimize engineering and control issues later."  He later testified, however, that he "fully expected" further discussion once AirClean had "done their homework," and that no final decision on substitution would be made until those additional discussions occurred.  Mr. Cammenga has also testified that the contract with GMP called for Webster burners, and that he would have expected such a material change to the contract to have been communicated through a written change order.

The October 1, 2019 arrangement drawings depict the proposed placement of the various equipment, and identify that equipment as including the "PowerFlame CMAX Burner."  ECF No. 21-7 at 3.  After reviewing the drawings, Mr. Cammenga allowed AirClean to "[p]lease proceed."  As noted above, Mr. Cammenga has stated that his team approved the burner location, but not the burner type.  He has since testified that in his professional experience, "never once was a general arrangement drawing used for specification approval."

Mr. Cammenga also testified that the substitution, particularly with respect to the controllers, made little sense from Long Falls' perspective:

> We don't have the tools to program them, to
> troubleshoot them, . . .  We have three or four
> electricians that don't know anything about them.
> Never been trained on them. . . .  In order for us to
> function with those going forward we would have to
> send all of our people out for training, we would have
> to purchase software tools to be able to the connect
> to this PLC, and we would have to buy laptops . . . .
> There's just no reason we would have agreed to that at
> all.

ECF No. 65 at 57-58.  He further explained that once the

substituted equipment arrived, "at the point in time when I was

told this is not the burner we ordered it was too late to do

anything about it.  We had no choice but to install what was

there."  Mr. Cammenga has also noted that as of delivery in

December 2019, he did not want to incur downtime during the

winter months waiting for new burners to be delivered.

AirClean objects to Long Falls' suggestion that Mr.

Cammenga's unexpressed beliefs and reservations about the

product substitution are relevant to the contract analysis.

Indeed, intent of the parties is a factual question "determined

by examining the objective words and deeds of the parties."

*Quenneville v. Buttolph*, 2003 VT 82, ¶ 17, 175 Vt. 444, 833 A.2d

1263.  Setting aside any unspoken beliefs or reservations,

however, the facts still fall short of showing a meeting of the

minds on the question of equipment substitution.  AirClean cites

the terms of its Proposal, which required any claims for

"corrections or deductions" regarding equipment to be made in

15

writing within ten days of delivery.  "If no claim is made,
Buyer will be deemed to have accepted all goods."  As discussed
above, Long Falls' Purchase Orders required the seller to submit
a written change notice, and explicitly objected to any changes
notwithstanding acceptance of delivery.  Questions of fact
preclude the Court from finding an agreement to either party's
contract terms.

Despite Mr. Cammenga's March 5, 2020 email confirming
delivery of all equipment needed to trigger the 40% milestone,
he has since testified that "all the equipment is still not
there.  Final payment is after the equipment is installed and
started up, and it is spelled right out under number four of
their proposal in the purchase order."  Item four of the
Proposal sets forth the milestone schedule, with the 40% payment
due after "Complete Delivery to Project Site."  Whether there
was "complete delivery" of all goods and services contemplated
by the parties at the time of their contract(s) remains in
dispute, and must be submitted to a trier of fact.

### C.   Boilers 1 and 2

AirClean argues that there has been no objection to its
performance in repairing the two boilers, and that payment is
therefore due in the amount of $152,574.94.  Long Falls submits
that this work was part of the entire Project, cannot be
parceled out for piecemeal payment, and that AirClean is in

16

breach with respect to the Project as a whole.  For support, Long Falls cites the prompt payment act, which "specifically contemplates owners withholding payments in good faith on grounds such as 'unsatisfactory job progress, defective construction, disputed work or third-party claims.' 9 V.S.A. § 4007(a)."  *See The Elec. Man, Inc. v. Charos*, 2006 VT 16, ¶ 12, 179 Vt. 351, 356, 895 A.2d 193, 197 (2006).  Long Falls also claims to have suffered nearly $1.7 million in losses due to AirClean's alleged breaches, and that it is entitled to withhold payment on that basis.

As there are factual disputes about the governing contract terms, the Court cannot grant summary judgment based upon part of the work performed.  The milestone contract option (item four of the Proposal) set forth by AirClean calls for payments at certain stages in the Project, but is silent with respect to any contract changes.  Work on boilers 1 and 2 was a change to the original Project scope.  Viewing the facts in a light most favorable to the non-moving party, Long Falls accepted the milestone scheme as the payment schedule, and may only be required to pay any remaining sums once there has been "Complete Delivery" (the 40% milestone) and "Installation/Startup" (the final 30% payment milestone).  Satisfaction of those contractual conditions remains disputed, and must be decided by a trier of fact.

### D.   Demobilization

Finally, AirClean submits that it did not breach the contract by demobilizing on January 31, 2020 without programming the VFDs.  It is undisputed that installing and wiring the VFDs was within Long Falls' scope of work.  Long Falls' emails indicate that as of February 11, 2020, that wiring had not been completed.  To the extent that the delay in wiring was due to missing parts, AirClean reiterates that those parts could have been obtained locally for approximately $10.  In any event, the parts were reshipped in early February 2020.

On February 13, 2020, AirClean acknowledged that it had not performed the VFD programming, and requested that Long Falls hold back payment only for that portion of the work.  Long Falls declined.  AirClean's motion for summary judgment argues that Long Falls breached its implied duty of good faith by failing to wire the VFDs after receiving the final (inexpensive) parts, and by using its "lack of diligence" to justify withholding over $400,000 in payment.

Long Falls argues that the relevant delays began in mid-December, when Troy Boiler improperly cut the conduits. Although the conduit work was rectified on or about December 23, 2019, the second burner had not yet been delivered.  Long Falls also notes that one of the VFDs arrived damaged and had to be returned.  Finally, AirClean did not provide schematics for

wiring VFDs until mid-January 2020, and all necessary parts were not delivered until late February 2020.  Accepting this timeline, there is a genuine dispute as to whether Long Falls could have completed the wiring prior to AirClean's demobilization on January 31, 2020.  The Court therefore declines to grant summary judgment on AirClean's claim for final payment.

## Conclusion

For the reasons set forth above, AirClean's motion for summary judgment on its cross-claim against Long Falls (ECF No. 88) is denied.

DATED at Burlington, in the District of Vermont, this 16th day of June, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge